Rodney SCHORLE, Plaintiff,

v.

CITY OF GREENHILLS, et al., Defendants.

No. C–1–80–424.

United States District Court,
S. D. Ohio, W. D.

Feb. 26, 1981.

Robert P. Malloy, Cincinnati, Ohio, for plaintiff.

R. Thomas Moorhead, Perrino, Woellner & Mire, Cincinnati, Ohio, for defendants.

SPIEGEL, District Judge.

This is a civil action for damages filed by plaintiff, Rodney Schorle (Schorle), on August 8, 1980, for violation of his civil rights pursuant to 42 U.S.C. §§ 1983 and 1988. The complaint is against the City of Greenhills, Ohio (City); Wilma DuPlain, the City's tax commissioner; Ronald E. Otting, the City's mayor; Larry Zettler and T. Sullivan, City police officers, and John E. Sellman, a notary public.

Schorle alleges that he was arrested by Officers Zettler and Sullivan on August 10, 1978, by virtue of an arrest warrant, and charged with violating Section 191.15 of the Income Tax Law of the City of Greenhills. He was held in custody until he could post a $100 bond. However, Schorle states that the complaint and affidavit upon which the warrant was based do not reflect the original signatures of the complainant, Wilma DuPlain, although John Sellman acknowledged them as sworn to and subscribed by him on August 10, 1978. Also, Schorle alleges, the complaint and affidavit were not ever properly reviewed by the Mayor before the arrest warrant issued, since the Mayor's purported signature on the warrant appears to be merely a rubber stamp.

The complaint further alleges that Schorle appeared in the Greenhills' Mayor's Court on August 22, 1978, at which time the matter was set over to September 29, 1978. At no time did Schorle ever waive his right to a jury trial or his right to be represented by counsel. Yet, on September 12, 1978, when Schorle, unrepresented, again appeared in Mayor's Court, the Mayor entered a plea of not guilty on his behalf and proceeded to hear evidence against him presented by the City. Thereafter, the Mayor found Schorle guilty of the charge against him and sentenced him to six months in jail and a fine of $1,000, despite the fact that the ordinance provides for a maximum penalty of six months' imprisonment and a $500 fine. The Mayor granted Schorle's request for a stay of execution but required him to post an additional bond of $1,000. Schorle remained in the City's custody until this bond could be posted. The Mayor never advised him of his right to appeal.

Schorle sought legal counsel and commenced an appeal to the Hamilton County, Ohio, Municipal Court. The Municipal Court granted Schorle's motion to dismiss the charge against him on January 20, 1979.

All of the defendants have filed a motion to dismiss the complaint or, in the alternative, to dismiss each of them as a party defendant (doc. 4). Plaintiff has filed a memorandum in opposition (doc. 7). Defendants' basis for dismissal of the complaint as to all of them is based on the argument that a one-year period of limitations should be applied to plaintiff's cause of action. As most of the injuries of which plaintiff complains occurred in August and September of 1978, the last act mentioned in his complaint being the dismissal of the City's charges against him by the Municipal Court on January 20, 1979, application of a one-year statute of limitations would clearly bar this action which was not filed until August 8, 1980.

■ Since there is no specifically stated or otherwise relevant federal statute of limitations for actions arising under the Civil Rights Acts, 42 U.S.C. §§ 1981 *et seq.*, federal courts must look to the most analogous state law in determining limitations periods. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1974); *Garner v. Stephens*, 460 F.2d 1144, 1145 (6th Cir. 1972).

As noted by The Honorable William O. Bertelsman in *Hines v. Board of Education of Covington, Kentucky*, 492 F.Supp. 469, 472 (E.D.Ky.1980):

Trial courts have been provided with little guidance in the methods to be used in making the required analysis. This court believes and holds that in implementing the Sixth Circuit approach the

two primary factors to be considered in attempting to analogize a federal civil rights claim to a state claim for the purpose of selecting an appropriate statute of limitations are the interest of the plaintiff sought to be protected, and the operative facts comprising the claim.

There are three Ohio statutes of limitations which the Sixth Circuit has recognized as being applicable to Civil Rights claims: Ohio's one-year statute of limitations for intentional torts, Ohio Rev. Code § 2305.11, *Austin v. Brammer*, 555 F.2d 142 (6th Cir. 1977); Ohio's four-year statute of limitations for injuries to the rights of the plaintiff not arising on contract nor enumerated in Ohio Rev. Code §§ 2305.10 to 2305.12, Ohio Rev. Code § 2305.09, *Crawford v. Zeitler*, 326 F.2d 119, 121 (6th Cir. 1964); and Ohio's six-year statute of limitations for an action upon a liability created by statute other than a forfeiture or a penalty, Ohio Rev. Code § 2305.07, *Mason v. Owens-Illinois, Inc.*, 517 F.2d 520 (6th Cir. 1975).

Defendants contend that plaintiff's complaint is most analogous to one for false arrest, false imprisonment, and malicious prosecution. Thus, they argue, that under *Austin, supra* and *Carmicle v. Weddle*, 555 F.2d 554 (6th Cir. 1977), Ohio's one-year statute of limitations, Ohio Rev. Code § 2305.11, is applicable.

*Austin* and *Carmicle* reached similar results under similar statutes of limitations in Ohio and Kentucky, respectively. In *Austin* the plaintiff alleged that his civil rights were violated by police officers who gave perjurious testimony in a state criminal action, which resulted in his conviction and incarceration. The Court found the most nearly analogous Ohio statute of limitations to be Ohio Rev. Code § 2305.11, which applies a limitations period of one year to actions of false imprisonment, which encompasses false arrest, *Alter v. Paul*, 101 Ohio App. 139, 135 N.E.2d 73 (1955), and malicious prosecution. However, the Sixth Circuit reversed the District Court's dismissal of the complaint on the basis that the running of the statute had been tolled by plaintiff's incarceration. Thus, the de-

termination made by the Sixth Circuit in *Austin* of the applicable statute of limitations is dicta.

In *Carmicle*, plaintiff's claim was that certain of his neighbors had conspired with local officials to falsely charge plaintiff with maintaining a nuisance in the neighborhood by countenancing the destructive conduct of his children. This charge culminated in the issuance of an injunction against the plaintiff by the County Circuit Court and allegedly forced the plaintiff to evacuate his home under threat of further prosecution. Plaintiff also contended that he was arrested without probable cause and that the Circuit Court was without jurisdiction of the offense charged. The Court found that K.R.S. § 413.140(1)(c), Kentucky's one-year statute of limitations for actions for false arrest and malicious prosecution was the most appropriate statute of limitations. In *Carmicle*, the Sixth Circuit explicitly rejected the application of K.R.S. § 413.120(2) which provides a limitation period of five years for an action upon a liability created by statute. 555 F.2d at 555.

However, in *Garner v. Stephens*, 460 F.2d 1144 (6th Cir. 1972), the Court held Kentucky's five-year statute of limitations, K.R.S. § 413.210(2), to be the correct period of limitation for an action pursuant to § 1983 of the Civil Rights Act where the plaintiff claimed that the County Board of Education had discriminated against her by requiring her to take a full year's leave of absence due to pregnancy. The Court found Kentucky's one-year limitation period for injury to the person of the plaintiff to be inapplicable, since the Kentucky courts had applied that statute only in cases of actual physical injury. Since the law of the state in question must be examined to determine the appropriate limitations period to apply, the Court found K.R.S. § 413.120(2), which limits an action upon a liability created by statute when no other time is fixed by the statute creating liability, to be the most appropriate. In so doing, the Court rejected the use of K.R.S. § 413.210(7), which provides a five-year limitation

period for injuries to the rights of the plaintiff.

Likewise, in *Mason v. Owens-Illinois, Inc.,* 517 F.2d 520 (6th Cir. 1975), the Court held Ohio Rev. Code § 2305.07, Ohio's six-year statute of limitations for an action upon a liability created by statute other than a forfeiture or a penalty, to be applicable to an action under 42 U.S.C. § 1981 which was brought by a former employee against a former employer for racial discrimination. In doing so, they used the rationale of *Garner.*

However, the Sixth Circuit took a different approach in dealing with cases arising in Michigan. Michigan has no period of limitations analogous to the Ohio or Kentucky periods for actions upon a liability created by statute. Thus, in *Marlowe v. Fisher Body,* 489 F.2d 1057 (6th Cir. 1973), and *Madison v. Wood,* 410 F.2d 564 (6th Cir. 1969), both discrimination actions brought under §§ 1981 and 1983, respectively, the Court reasoned that a deprivation of civil rights is primarily a violation of personal rights. Accordingly, the Court applied the Michigan three-year statute of limitations relating to an action for damages for injuries to the person. Unlike the Kentucky state courts, the Michigan courts have construed that statute to apply to all injuries to the person, not just physical ones. Mich. Comp. Laws Ann. § 600.5805(7).

Ohio, like Michigan and Kentucky, has a limitation period for an injury to the rights of the plaintiff. Ohio Rev. Code § 2305.07. In both Ohio and Kentucky, the Sixth Circuit chose to apply the statutes of limitations for actions upon a liability created by statute, rather than those for injuries to the rights of the person, in cases involving discrimination. This appears to be inconsistent with the Sixth Circuit reasoning in *Marlowe* and *Madison* where the Court recognized that a civil rights violation was essentially an injury to a plaintiff's personal rights. Nonetheless, had Michigan had a statute for actions upon a liability created by statute, it would appear that the Sixth Circuit would have chosen that one instead of the Michigan statute for injuries to the

person, under the rationale that a civil rights action is most analogous to an action for a liability created by statute, at least when it involves discrimination.

On the other hand, when the factual allegations of a § 1983 action encompassing due process violations bear some resemblance to a common law tort, the Sixth Circuit, as noted, has approved the application of a state statute which provides for a limitation period for that tort. However, the Sixth Circuit has also recognized that a complaint alleging Fourteenth Amendment due process violations may be broader than an intentional tort.

In *Crawford v. Zeitler,* 326 F.2d 119 (6th Cir. 1964), the plaintiff filed a complaint under 42 U.S.C. §§ 1982, 1983, and 1985 alleging that he was falsely arrested, illegally detained, his person and automobile illegally searched and the fruit of such search illegally seized and used against him as incriminating evidence. The Court noted that, to the extent that the allegations of the complaint charged malicious prosecution and false imprisonment, plaintiff's action would be barred by Ohio's one-year statute of limitation for those intentional torts, Ohio Rev. Code § 2305.11. However, the Court further stated:

> The complaint's charge of violation of civil rights, however, is broader than the tort described in this statute .... If pleaded, we would consider that § 2305.-09, Page's Ohio Revised Code, Anno., barred plaintiff's action. That section fixes a four-year limitation on actions, *"For an injury to the rights of the plaintiff not arising on contract nor enumerated in sections 2305.10 to 2305.12 inclusive, 2305.14 and 1304.29 of the Revised Code."*

326 F.2d at 121. *Crawford* still appears to be good law today. *Coffy v. Multi-County Narcotics Bureau,* 600 F.2d 570, 581 fn. 12 (6th Cir. 1979) ("We reject the argument ... that this action is barred by the Ohio statute of limitations [citing *Crawford*]. Even if this case was simply one for malicious prosecution, the action would still be timely filed.")

From this analysis, it is not difficult to understand possible confusion among members of the bar, to say nothing of plaintiffs unschooled in the vagaries of the law, as to when an action for violation of one's civil rights may be brought. While plaintiffs alleging violations of their Fourteenth Amendment equal protection rights are allowed six years within which to bring their causes of action, plaintiffs alleging deprivations of their Fourteenth Amendment due process rights could very well be denied relief after only one year has passed. Both sets of plaintiffs, however, have the same fundamental complaint, which is a deprivation of the Fourteenth Amendment rights to receive fair treatment at the hands of those acting under color of state authority. Also, both sets of plaintiffs may properly bring their actions under the same statute for redress of either due process or equal protection violations, 42 U.S.C. § 1983.

This brings us back to the issue of which of Ohio's state laws is the most analogous to 42 U.S.C. § 1983 in order to determine the limitation period which should be applied to it. To clarify this issue, it is necessary to turn to an analysis of § 1983 itself. The purpose of § 1983 is plain—to enforce the provisions of the Fourteenth Amendment. To state a cause of action under the statute requires an allegation of facts which constitute a deprivation under color of state authority of a right guaranteed by the Fourteenth Amendment. *Monroe v. Pape*, 365 U.S. 167, 171, 81 S.Ct. 473, 475, 5 L.Ed.2d 492 (1961), overruled on other grounds, *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). By creating an express federal remedy, Congress sought to "enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a state and represent it in some capacity, whether they act in accordance with their authority or misuse it." 365 U.S. at 172, 81 S.Ct. at 476. And, inasmuch as § 1983 is remedial legislation, it is to be given a liberal construction. The Civil Rights Act is not to be construed narrowly. *See* Antieau, Chester J., *Federal Civil Rights Acts*, Vol. 1, 2d Ed. § 52 at p. 95

(1980). Thus, although a particular cause of action under § 1983 may bear some superficial resemblance to a common law tort, it is clear that the statute itself is greatly different, both in purpose and in the factual allegations necessary to state a cause of action.

Indeed, the Seventh Circuit recently adopted this rationale in rejecting the application of a statute of limitations for intentional tort in Illinois to a § 1983 action in favor of Illinois' five-year statute of limitations covering causes of action created by statute. *Beard v. Robinson*, 563 F.2d 331 (7th Cir. 1977), *cert. denied*, 438 U.S. 907, 98 S.Ct. 3125, 57 L.Ed.2d 1149. That Court stated:

We believe our choice ... is compelled by the fundamental differences between a civil rights action and a common law tort. The Civil Rights Acts do not create "a body of general federal tort law." *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). Rather, they "creat[e] rights and impos[e] obligations different from any which would exist at common law in the absence of statute. A given state of facts may of course give rise to a cause of action in common-law tort as well as to a cause of action under Section 1983, but the elements of the two are not the same. The elements of an action under Section 1983 are (1) the denial under color of state law (2) of a right secured by the Constitution and laws of the United States. Neither of these elements would be required to make out a cause of action in common-law tort; both might be present without creating common-law tort liability." *Smith v. Cremins*, 308 F.2d 187, 190 (9th Cir. 1962).

563 F.2d at 336–37. The Court in *Beard* noted that by following this approach it could avoid the often strained process of characterizing civil rights claims as common law torts as well as the inconsistency and confusion that results from different statutes of limitations being applied to one cause of action due to attempting to analogize factual situations to state causes of

action. Both the Second and Ninth Circuits uniformly follow the Seventh Circuit's approach and apply state limitations periods for statutory causes of action. *See Rosenberg v. Martin*, 478 F.2d 520, 526 (2d Cir.) *cert. denied* 414 U.S. 872, 94 S.Ct. 102, 38 L.Ed.2d 90 (1973); *Swan v. Board of Higher Education of the City of New York*, 319 F.2d 56, 60 (2d Cir. 1968); and *Donovan v. Reinbold*, 433 F.2d 738, 741–742 (9th Cir. 1970). The Fourth Circuit has reasoned that a federal civil rights action is more serious than a common law tort, and thus deserved a longer statute of limitations. *See Almond v. Kent*, 459 F.2d 200, 203–204 (4th Cir. 1972) and Mr. Justice Harlan's concurring opinion in *Monroe v. Pape*, 365 U.S. 167, 196, 81 S.Ct. 473, 488, 5 L.Ed.2d 492 (1961) ("a deprivation of a constitutional right is significantly different from and more serious than a violation of a state right and therefore deserves a different remedy even though the same act may constitute both a state tort and the deprivation of a constitutional right").

While the Sixth Circuit has not explicitly embraced these concepts, we believe our analysis of the case law to this point leads to the conclusion that these concepts are properly applied to the cause of action stated in the instant case. *Crawford v. Zeitler*, 326 F.2d 119 (6th Cir. 1964); *Coffy v. Multi-County Narcotics Bureau*, 600 F.2d 570 (6th Cir. 1979). The facts stated in the instant complaint are much broader than those giving rise to the simple common law torts of false arrest, false imprisonment, and malicious prosecution.

■ While some of the allegations in the complaint involve incidents frequently associated with malicious prosecution or false imprisonment, it is not alleged that the criminal complaint was initiated without probable cause. The thrust of the complaint is not that the charges against the plaintiff were totally without merit, but that in the proceedings on the charges against him, he was denied certain funda-mental protections and rights. It is asserted that any individual charged with a criminal offense has a right to be fairly apprised of his constitutional protections and has a right to have the matter heard in a court of proper jurisdiction. The only relief available to such an individual arises under the Civil Rights Act.

Plaintiff's claim is broader and different from a claim that he was accused without probable cause or that he was improperly detained or arrested. The thrust of plaintiff's complaint is that he was repeatedly deprived of certain fundamental rights by the concerted actions of the officials and employees of the City of Greenhills and by a judge of a court that had no jurisdiction to hear the matter. The continuum of incidents inextricably entwined, which culminated in the plaintiff's conviction in the Greenhills' Mayor's Court, demonstrates not that he was falsely accused or that he was falsely arrested or imprisoned, but rather that he suffered injury to his rights guaranteed under the Constitution—his rights to counsel, to be advised of his right to have a jury trial, to have the matter heard in a court of proper jurisdiction, and not to be sentenced in excess of the permitted penalty. It is not for this Court to break plaintiff's complaint down into isolated incidents which would, if taken separately, bear some token resemblance to various state common law torts. This is because it is the series of events, the totality of acts done under color of state law, which have allegedly deprived plaintiff of his rights under the Constitution. And, it is this continuum of events, for which there is no adequate state relief, that comprises a cause of action under § 1983 that is broader than a common law tort. Indeed, Title 42 U.S.C. § 1983 is only one example of sweeping legislation enacted by Congress to provide relief for citizens for whom the state cannot or will not provide adequate redress.[1] For federal courts to apply a limited state limitations period,

---

1. The Federal Employers Liability Act is another such statute enacted by Congress to establish federal relief, where state remedies were inadequate to deal with a problem of national import. *Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493, *reh. den.* 353 U.S. 943, 77 S.Ct. 808, 1 L.Ed.2d 764 (1957).

such as a one-year period for a common law tort, to a § 1983 complaint would only serve to defeat the broad remedial purpose Congress intended in passing the Civil Rights Act, 42 U.S.C. §§ 1981 *et seq. McNeese v. Board of Education for Community Unit School District 187*, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); *Madison v. Wood*, 410 F.2d 564 (6th Cir. 1969).

The claim for injury to plaintiff's rights is not enumerated in § 2305.11 of the Ohio Revised Code. Just because some of the actions listed therein will usually include some allegations similar to those set forth in the complaint in this case does not require the Court to ignore the fact that several claims for relief may arise from an overlay of similar facts. Thus, this Court finds that the complaint in the instant case does allege facts broader than a common law tort, cf. *Beard v. Robinson*, 563 F.2d 331 (7th Cir. 1977); *Almond v. Kent*, 459 F.2d 200, 204 (4th Cir. 1972); and *Donovan v. Reinbold*, 433 F.2d 738, 741 (9th Cir. 1970). Therefore, under *Crawford* and *Coffy*, the plaintiff has four years within which to bring his cause of action under Ohio Rev. Code § 2305.09. His complaint thus is not barred and shall not be dismissed on the basis that his cause of action was not timely filed.

However, we note the persuasive reasoning of the Second, Seventh, and Ninth Circuits, which courts have determined that the most analogous state statute of limitations to apply to a § 1983 action, is one similar to Ohio's statute which provides a limitation period for an action upon a liability created by statute, Ohio Rev.Code § 2305.07. The Sixth Circuit has already determined that such a statute applies to civil rights actions alleging deprivation of rights under the equal protection clause of the Fourteenth Amendment. *Garner v. Stephens*, 460 F.2d 1144 (6th Cir. 1972); *Mason v. Owens-Illinois, Inc.*, 517 F.2d 520 (6th Cir. 1975). And, because of the nature and purpose of § 1983, as well as to eliminate confusion and to foster uniformity in the application of the law to § 1983 plaintiffs, this Court, on the basis of its review of the current state of the law, would be inclined to adopt that statute as to all actions arising in Ohio brought under § 1983.

It is this Court's opinion that a well-pleaded cause of action under § 1983 always states a cause of action broader than one for a simple common law tort. The difference lies in concepts which are fundamental to our democratic way of life. Although it is true that activity which is a tort if done by a private person may take on the character of a violation of a constitutional right if done by one acting under color of state law, it is also true that many things, if done privately, *e. g.*, discrimination, are not actionable. This is so because those who govern bear a heavy burden of responsibility in enforcing the laws upon the governed. Those who under our political compact have the privilege and authority to govern must do so fairly and reasonably with respect for the rights guaranteed to all citizens under the Constitution. The burden thus imposed on those who govern is not unreasonable if the individuals by whose authority and for whose benefit they act are to perceive and enjoy those benefits of freedom and democracy to which they are entitled, rather than to suffer the abuses of a police state. While one may expect fair treatment from his fellow man, it is his right to do so from those in authority. Thus, the allegation that one has been deprived of a fundamental right by, or has suffered continuing abuses at the hands of, *one acting under color of law* is the essence of a § 1983 action as well as that element of a § 1983 action which sets it forever apart, in breadth, from its sometime superficially analogous partner in common law tort.

■ Defendant has also moved to dismiss Wilma DuPlain, the City's tax commissioner, and Ronald E. Otting, the City's mayor, as party defendants.

Defendant contends that Ms. DuPlain should be dismissed because the complaint alleges no personal involvement, and a defendant cannot be made to answer in damages for a violation of a plaintiff's Constitutional rights unless he is personally involved. *Adams v. Pate*, 445 F.2d 105 (7th

Cir. 1971); *Williams v. Vincent*, 508 F.2d 541, 546 (2d Cir. 1974).

Plaintiff argues that such contention ignores the thrust of the action. It is asserted in paragraph II of the complaint that it was only a copy of her signature which was on the face of the document supposedly sworn to and acknowledged before a notary public and then filed with the court. The implication is that she signed the document out of the presence of the notary yet permitted the complaint to be filed as if it were her sworn statement. The complaint further asserts, in paragraph XX, that this action of hers was part of the series of events which deprived the plaintiff of due process and equal protection of the law.

Upon review of these arguments, the Court concludes that prior to making a determination of this issue, it will be necessary to ascertain more facts as to Ms. DuPlain's personal involvement in the action. Until that time, a motion to dismiss her as a party defendant is premature, and must be denied.

Defendants have also moved to dismiss Ronald E. Otting on the basis that all of his actions that allegedly constitute deprivations of plaintiff's Constitutional rights were performed by him acting in his judicial capacity for the City. As such, defendants argue, he is absolutely immune from liability for the purposes of a § 1983 action.

■ The doctrine of judicial immunity protects a judge from being held liable under § 1983 for any actions taken while he is acting within his jurisdiction. *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). A judge will not be deprived of such immunity because the action he took was in error, was done maliciously, or was in excess of his authority. Yet, judicial immunity in this context is not absolute. A judge may be subject to liability when he has acted in the "clear absence of all jurisdiction." *Bradley v. Fisher*, 13 Wall. 335, 351, 20 L.Ed. 646 (1872). When a judge knows he lacks jurisdiction, or acts in the face of clearly valid statutes or case law expressly depriving him of jurisdiction, judicial immunity is lost. *Rankin v. Howard*, 633 F.2d 844 (9th Cir. 1980).

■ Plaintiff has alleged facts which demonstrate that Ronald E. Otting, as Mayor of the City, acted in the face of clearly valid statutes which expressly deprived him of jurisdiction when he attempted to perform the judicial function of trying the charges against the plaintiff.

The complaint alleges in paragraphs 14 and 15 that the court lacked jurisdiction to proceed on the matter when the defendant refused to waive his right to a jury trial and to waive his right to be represented by counsel in writing. Section 1905.01, Ohio Rev.Code, provides that a Mayor's Court has jurisdiction to hear and determine any prosecution for violation of its ordinances subject to the limitations set forth in Sections 2937.08 and 2938.04, Ohio Rev.Code.

Both of these sections require the magistrate in a court not of record, such as a mayor's court, to transfer any case in which the accused has a right to a jury trial to a court of record unless the accused waives his right to a jury trial in writing. And, at any trial for the violation of any statute or ordinance, the accused has a right to a jury trial unless the penalty involved does not exceed a fine of $100. Section 2945.17, Ohio Rev.Code. As stated in the complaint, plaintiff was charged with violation of an ordinance providing a maximum penalty of six months' imprisonment and a $500 fine. The Mayor, without jurisdiction to hear the case due to plaintiff's refusal to waive his right to a jury trial, found the plaintiff guilty and imposed a penalty in excess of the maximum allowed by ordinance. Jurisdiction being clearly absent under these circumstances, Mr. Otting has lost his cloak of judicial immunity, and defendant's motion to dismiss him as a party defendant must therefore be denied.

Consequently, the Court denies all portions of defendants' motion to dismiss the complaint, both in toto and as to either Wilma DuPlain or Ronald E. Otting.

SO ORDERED.